UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

LADON S. CHURN,

    Plaintiff,

v.                                                                   Case No. 2:11-cv-166
                                                                      HON. ROBERT HOLMES BELL

UNKNOWN PARKKILA, et al.,

    Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Ladon Churn, an inmate currently confined at the Baraga Maximum Correctional Facility , filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against several employees of the Michigan Department of Corrections (MDOC), naming them in their individual capacities. Specifically, defendants include Guard Unknown Parkkila, Deputy Warden L. Rutter, Guard D. Mayotte and Sergeant Unknown Viitala, all of whom are employed at Alger Correctional Facility.

Plaintiff's complaint alleges that plaintiff is designated as a member of Security Threat Group (STG). Plaintiff alleges that he has a reputation as a "complainer" and a "whiner." Defendant Parkkila told plaintiff "you're on my list." Plaintiff felt assaulted by defendant Parkkila. Plaintiff asserts that defendant Parkkila's actions made plaintiff feel like not eating dinner and, as an African American, plaintiff had never "threatened white citizens." Plaintiff filed a grievance, but believes that he was treated unfairly in the process. Plaintiff asserts that the denial of the grievance only encouraged defendant Parkkila to use more intimidation. On October 15, 2008, defendant

Parkkila beat on plaintiff's cell door and stated "you're scared to come out now!? You'd better watch your back black bitch." Plaintiff asserted that he was placed in fear of a future assault. Plaintiff filed a grievance that night. Plaintiff asserts that he believes that defendant Parkkila tried to pay assaultive prisoners to attack plaintiff.

Plaintiff alleges that on October 17, 2008, defendant Rutter became involved in the wrongful conduct. Plaintiff asserts that he had filed numerous grievances against defendant Rutter in the past. Plaintiff alleges that defendant Rutter, prior to October 2008, was the Inspector and local STG coordinator. Plaintiff complains that defendants ignored threats from one STG member to another and instead manipulated rival gang members against each other for defendants own personal needs.

On October 24, 2008, defendant Rutter allegedly was involved in screening plaintiff for a transfer to Marquette Branch Prison where plaintiff's known rivals were housed. Plaintiff complains that defendant Parkkila and defendant Rutter should have known that prisoner Johnson belonged to a rival gang, Gangster Disciples, and was a highly assaultive prisoner housed at the Marquette Branch Prison. Defendants chose not to reveal this information to plaintiff prior to the transfer.

Plaintiff complains that defendant Rutter rejected a letter sent to plaintiff from prisoner K. Sanders which exposed an intra-gang rivalry involving A. Taylor. The letter was sent back to STG Coordinator Marquette Branch Prison Inspector J. Mayotte. Plaintiff asserts that when he arrived at Marquette Branch Prison he was searched by guard D. Mayotte, who is married to Inspector J. Mayotte. Guard D. Mayotte allegedly told plaintiff that defendant Rutter had called

Marquette Branch Prison days before plaintiff's arrival. Plaintiff believes that D. Mayotte gave the letter from defendant Rutter to prisoner A. Taylor in an attempt to provoke a violent response.

Plaintiff alleges that on October 29, 2008, prisoner Johnson attacked him from behind and severely beat him. Plaintiff complains that he suffered with blood loss, facial swelling, loss of mobility and lacerations. Plaintiff was given a misconduct ticket for fighting, although he claims that he never threw a punch. Plaintiff states that he was told by the Security Classification Committee at a later time that he was the victim of a Gangster Disciples hit involving prisoners Johnson, Rogers and Grannison. Plaintiff asserts that he did not know that these prisoners were his rivals before he was told this information. Only prisoner Rogers was later designated as an STG Gangster Disciples member.

About this same time, plaintiff alleges that defendant D. Mayotte came to his cell and loudly asked "W. Hose Moe Better?! Tell me what's up with Moe Better? Send me a kite telling what's up with Moe Better?" Plaintiff states that at the time he was confused, but later learned that prisoner Grannison was moved to general population and was known as "Moe Better." Plaintiff asserts that defendant Mayotte was attempting to set plaintiff up for a future attack by making it look like plaintiff was a snitch. Plaintiff believed that prisoner Grannison was written a Notice of Intent to segregate to prevent the Vice Lords gang from retaliating against prisoner Grannison for his involvement in the attack on plaintiff. Plaintiff asserts that this was all orchestrated by defendants in an attempt to maintain a vicious cycle of STG related violence against African American prisoners by rival prison gangs.

Plaintiff states that he was told in December that his attackers were all designated STG members and Special Offender Notifications were written. Plaintiff complains that his

attackers were in fact not so designated, so he filed a grievance.  Plaintiff was then released into general population, but prison officials controlled his association with other prisoners.  Plaintiff believes that there is a "quid pro quo" relationship between STG leaders and prison officials.  Marquette officials, according to plaintiff, would allow rival gang attacks so long as a weapon was not used.

Plaintiff was moved into the "E-Block Hole on 2nd gallery cell #8."  Prisoner Berry was in cell #7 and is also an STG designated Vice Lord.  Plaintiff complains that prison officials controlled his association with prisoner Berry.  Defendant Viitala allegedly informed prisoner Berry that the prison will let them "do your gangbanging thing" as long as prisoners are not using knives.  At that point, defendant Viitala explained that prison officials will come down hard.  Plaintiff asserts that defendant Viitala was responsible for placing prisoner Berry on STG status.  Defendant Viitala then stated a few days later that he just got prisoner Taylor transferred back from Baraga and that Taylor would be in Marquette around lunch time.  Plaintiff claims that this was done simply to instigate STG related contact.  Plaintiff believes that prison officials were acting in agreement with Inspector Shane Place.  Prisoner Taylor did in fact arrive around lunch time that day.  In April 2009, prisoner Taylor attacked Iraqi National prisoner M. Alhumrani while he was talking with prisoner Sanders.  Prisoner Alhumrani was then placed in a cell next to plaintiff, and given a misconduct ticket for fighting.  Defendant Viitala allegedly told plaintiff that "we all watched it on tape in Place's office - laughing like hell!"  Defendant Viitala further volunteers that they knew that prisoner Taylor would attack prisoner Alhumrani.

In May 2009, plaintiff was placed back into general population.  On July 12, 2009, plaintiff was again attacked by three black prisoners and severely beaten resulting in injury.  His

three attackers had an STG 2 designation as Vice Lord enforcers. A couple of guards were also injured during the incident. Plaintiff was then told that prisoner Sanders and the leader of the Vice Lords placed a hit on plaintiff. Plaintiff was given a misconduct ticket for fighting. Plaintiff asserts that the misconduct was factually incorrect because only one attacker was represented. The report, according to plaintiff, concealed the truth of what actually happened. Plaintiff believes that Inspector Place dictated how the report was written. Plaintiff alleges that prisoner Sanders was later placed in the hole for assault on a prisoner during the attack in the cell right behind plaintiff's cell. Plaintiff alleges that this forced his interaction and association with prisoner Sanders. Prisoner Sanders denied placing a hit on plaintiff and told plaintiff that Inspector Place, D. Mayotte, J. Mayotte and Guard Viitala were all involved in setting up the attack.

On September 20, 2009, prisoner Taylor was then placed in segregation near prisoner Sanders. Plaintiff states that this intimidated him and placed him in distress. Prisoner Marcum, a STG Latin King leader, was placed in segregation right next to prisoner Sanders. Plaintiff asserts that prisoner Marcum was told by Inspector Place to keep the young Latins in check. Prisoner Marcum was placed in the hole for not dispersing when ordered. Plaintiff told prisoner Marcum to tell Inspector Place that he was just doing as ordered and was keeping the young Latin's in check. Prisoner Marcum told plaintiff that he wrote Inspector Place the next day as plaintiff suggested. Prisoner Marcum told plaintiff that defendant Viitala tried to recruit him to be one of Viitala's rats, but when Marcum refused, Viitala stated that it was okay because prisoner Sanders tells him everything anyway. Defendant Viitala denied making this comment, but his denial was not believed by any of the prisoners.

Prisoners Marcum and Sanders were then released into general population in October, which plaintiff states is the fastest that he has ever heard of prisoners being released from administrative segregation. Plaintiff believes that Inspector Place ordered these releases simply to provide an opportunity for STG related reprisals. Plaintiff was then released into the general population on October 22, 2009, and was housed near prisoner Sanders. Plaintiff asserts that this was done to set up a potential retaliatory act for the prior assault. Plaintiff alleges that he was then transferred to Baraga Maximum Correctional Facility for no valid reason when he could have been sent to a different prison and placed in a lower security level where there existed no STG activity or rival gang members.

>Plaintiff asserts three claims:
>
>MDOC employees decided to use threats of violence to intimidate plaintiff from exercising First Amendment freedoms; in violation of federal law and the U.S. Constitution - Bill of Rights, 42 U.S.C. § 1983 and 1997(d).
>
>MDOC employees decided to instigate violent attacks against plaintiff, in violation of the Eighth Amendment of the U.S. Constitution - Bill of Rights, 42 U.S.C. § 1983.
>
>MDOC employees decided to expose plaintiff to a continuous cycle of STG related dangers to intimidate black citizens from exercising the freedom of speech, in egregious violation of the Equal Protection Clause, U.S. Constitution - Bill of Rights, 42 U.S.C. § 1985(3) and 1986.

Plaintiff requests declaratory judgment, injunctive relief and compensatory and punitive damages of $100,000.00.

Defendants Rutter and Viitala previously filed a motion for summary judgment, which was denied by the court on March 15, 2012 (docket #58). Presently before the Court is the Motion for Summary Judgment filed by Defendants D. Mayotte and Parkkila (docket #28), pursuant

to Fed. R. Civ. P. 56. Plaintiff has filed a response and the matter is ready for decision. Because both sides have asked that the Court consider evidentiary materials beyond the pleadings, the standards applicable to summary judgment apply. *See* Fed. R. Civ. P. 12(b).

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Defendants Parkkila and Mayotte argue that Plaintiff has failed to establish a retaliation claim. Retaliation based upon a prisoner's exercise of his or her constitutional rights

violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Defendants Parkkila and Mayotte argue that they took no adverse action against Plaintiff, and Plaintiff cannot show causation between his grievance filings and any of their actions. Defendants Parkkila and Mayotte assert that Plaintiff's retaliation claims against them are entirely conclusory. Defendants Parkkila and Mayotte state that the only evidence that they threatened Plaintiff or set him up to be attacked by other prisoners is Plaintiff's conclusory assertions. Moreover, Defendants Parkkila and Mayotte state that there is no evidence that either of them had acted with a retaliatory motive. Defendants Parkkila and Mayotte offer their affidavits, in which they deny Plaintiff's allegations against them.

In response to Defendant Parkkila and Mayotte's motion, Plaintiff reasserts the allegations set forth in his complaint. In addition, Plaintiff offers his affidavit, as well as the affidavits of prisoners Calvin Moore #185226 and Ivan Berry #476623. In addition, Plaintiff offers a copy of the grievance record for No. LMF-08-10-4425-17a, which Plaintiff filed against Defendant Parkkila for allegedly making a threat against him. (Docket #34.)

The undersigned concludes that the conclusory denial of wrongdoing by Defendants Parkkila and Mayotte merely creates a genuine issue of material fact. Consequently, Defendants Parkkila and Mayotte are not entitled to summary judgment on Plaintiff's retaliation claims.

Defendants Parkkila and Mayotte argue that plaintiff has failed to establish an Eighth Amendment conditions of confinement claim. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)).

Inmates have a constitutionally protected right to personal safety grounded in the Eighth Amendment. *Farmer*, at. 825, 833. Thus, prison staff are obliged "to take reasonable measures to guarantee the safety of the inmates" in their care. *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984). To establish a violation of this right, Plaintiff must show that Defendants Parkkila and Mayotte were deliberately indifferent to the Plaintiff's risk of injury. *Walker v. Norris*, 917 F.2d 1449, 1453 (6th Cir.1990); *McGhee v. Foltz*, 852 F.2d 876, 880-881 (6th Cir.1988). While a prisoner does not need to prove that he has been the victim of an actual attack to bring a personal safety claim, he must at least establish that he reasonably fears such an attack. *Thompson v. County of Medina, Ohio*, 29 F.3d 238, 242-43 (6th Cir.1994) (holding that plaintiff has the minimal burden of "showing a sufficient inferential connection" between the alleged violation and inmate violence to "justify a reasonable fear for personal safety.")

Defendants Parkkila and Mayotte assert that there is no evidence that they knew of or disregarded a substantial risk of serious harm to Plaintiff and deny Plaintiff's allegations against them. Plaintiff has responded by filing affidavits restating his allegations against Defendants Parkkila and Mayotte. (Docket #62 and #64.) As noted above, the conclusory denial of wrongdoing by Defendants Parkkila and Mayotte fails to resolve the factual issues as to Plaintiff's Eighth Amendment claims against them.

Defendants Parkkila and Mayotte argue that they are entitled to dismissal of Plaintiff's equal protection claims. Plaintiff has asserted that Defendants Parkkila and Mayotte took action against him because he is African American. Plaintiff argues that most STG prisoner are African American and that defendants engaged in a scheme to keep African American prisoners fighting amongst themselves. Plaintiff claims that white prisoners are not treated in the same manner. The Equal Protection Clause of the Fourteenth Amendment provides that a state may not

"deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. CONST., amend. XIV; *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985). When a law adversely impacts a "suspect class" such as one defined by race, alienage, or national origin, or invades a "fundamental right" such as speech or religious freedom, the rigorous "strict scrutiny" standard governs, whereby such laws "will be sustained only if they are suitably tailored to serve a compelling state interest." *City of Cleburne*, 473 U.S. at 440. Plaintiff has asserted that Defendants transferred him and exposed him to violence from rival gang members solely because he is African American. Plaintiff asserts that most of the gang members and STG prisoners are African American and the Defendants encourage reprisals and violence among the African American prison population. Defendants Parkkila and Mayotte have not set forth anything more than a general denial of the facts as alleged by Plaintiff. Defendants Parkkila and Mayotte have failed to support their motion for summary judgment.

Finally, Defendants move for qualified immunity. When making a qualified immunity analysis, the facts must be interpreted in the light most favorable to the plaintiff. Part of the analysis is to determine whether there are any genuinely disputed questions of material fact. *Kain v. Nesbitt*, 156 F.3d 669, 672 (6th Cir. 1998). Where there is a genuinely disputed question of fact, it is for the trier of fact to resolve, not the judge. "This would be true notwithstanding that the trial judge found the [defendant] officer to be more credible than the plaintiff because it is not for the court to make credibility determinations at this stage of the proceeding." *Id.* A question of fact exists that requires this court to deny Defendants Parkkila and Mayotte's qualified immunity claims.

In summary, in the opinion of the undersigned, Plaintiff has sustained his burden of proof in response to the Motion for Summary Judgment filed by Defendants Parkkila and Mayotte.

Accordingly, it is recommended that the Motion for Summary Judgment (docket #28) filed by Defendants Parkkila and Mayotte be denied.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

       /s/ Timothy P. Greeley
       TIMOTHY P. GREELEY
       UNITED STATES MAGISTRATE JUDGE

Dated:   August 21, 2012