UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

LADON S. CHURN,

    Plaintiff,

v.

UNKNOWN PARKKILA, et al.,

    Defendants.
_____/

Case No. 2:11-cv-166
HON. ROBERT HOLMES BELL

## REPORT AND RECOMMENDATION

Plaintiff Ladon Churn, an inmate currently confined at the Baraga Maximum Correctional Facility, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against several employees of the Michigan Department of Corrections (MDOC), naming them in their individual capacities. Specifically, defendants include Guard Unknown Parkkila, Deputy Warden L. Rutter, Guard D. Mayotte and Sergeant Unknown Viitala.

Plaintiff's complaint alleges that plaintiff is designated as a member of Security Threat Group (STG). Plaintiff alleges that he has a reputation as a "complainer" and a "whiner." Defendant Parkkila told plaintiff "you're on my list." Plaintiff felt assaulted by defendant Parkkila. Plaintiff asserts that defendant Parkkila's actions made plaintiff feel like not eating dinner and, as an African American, plaintiff had never "threatened white citizens." Plaintiff filed a grievance, but believes that he was treated unfairly in the process. Plaintiff asserts that the denial of the grievance only encouraged defendant Parkkila to use more intimidation. On October 15, 2008, defendant Parkkila beat on plaintiff's cell door and stated "you're scared to come out now!? You'd better

watch your back black bitch." Plaintiff asserted that he was placed in fear of a future assault. Plaintiff filed a grievance that night. Plaintiff asserts that he believes that defendant Parkkila tried to pay assaultive prisoners to attack plaintiff.

Plaintiff alleges that on October 17, 2008, defendant Rutter became involved in the wrongful conduct. Plaintiff asserts that he had filed numerous grievances against defendant Rutter in the past. Plaintiff alleges that defendant Rutter, prior to October 2008, was the Inspector and local STG coordinator. Plaintiff complains that defendants ignored threats from one STG member to another and instead manipulated rival gang members against each other for defendants own personal needs.

On October 24, 2008, defendant Rutter allegedly was involved in screening plaintiff for a transfer to Marquette Branch Prison where plaintiff's known rivals were housed. Plaintiff complains that defendant Parkkila and defendant Rutter should have known that prisoner Johnson belonged to a rival gang, Gangster Disciples, and was a highly assaultive prisoner housed at the Marquette Branch Prison. Defendants chose not to reveal this information to plaintiff prior to the transfer.

Plaintiff complains that defendant Rutter rejected a letter sent to plaintiff from prisoner K. Sanders which exposed an intra-gang rivalry involving A. Taylor. The letter was sent back to STG Coordinator Marquette Branch Prison Inspector J. Mayotte. Plaintiff asserts that when he arrived at Marquette Branch Prison he was searched by guard D. Mayotte, who is married to Inspector J. Mayotte. Guard D. Mayotte allegedly told plaintiff that defendant Rutter had called Marquette Branch Prison days before plaintiff's arrival. Plaintiff believes that D. Mayotte gave the letter from defendant Rutter to prisoner A. Taylor in an attempt to provoke a violent response.

Plaintiff alleges that on October 29, 2008, prisoner Johnson attacked him from behind and severely beat him. Plaintiff complains that he suffered with blood loss, facial swelling, loss of mobility and lacerations. Plaintiff was given a misconduct ticket for fighting, although he claims that he never threw a punch. Plaintiff states that he was told by the Security Classification Committee at a later time that he was the victim of a Gangster Disciples hit involving prisoners Johnson, Rogers and Grannison. Plaintiff asserts that he did not know that these prisoners were his rivals before he was told this information. Only prisoner Rogers was later designated as an STG Gangster Disciples member.

About this same time, plaintiff alleges that defendant D. Mayotte came to his cell and loudly asked "W. Hose Moe Better?! Tell me what's up with Moe Better? Send me a kite telling what's up with Moe Better?" Plaintiff states that at the time he was confused, but later learned that prisoner Grannison was moved to general population and was known as "Moe Better." Plaintiff asserts that defendant Mayotte was attempting to set plaintiff up for a future attack by making it look like plaintiff was a snitch. Plaintiff believed that prisoner Grannison was written a Notice of Intent to segregate to prevent the Vice Lords gang from retaliating against prisoner Grannison for his involvement in the attack on plaintiff. Plaintiff asserts that this was all orchestrated by defendants in an attempt to maintain a vicious cycle of STG related violence against African American prisoners by rival prison gangs.

Plaintiff states that he was told in December that his attackers were all designated STG members and Special Offender Notifications were written. Plaintiff complains that his attackers were in fact not so designated, so he filed a grievance. Plaintiff was then released into general population, but prison officials controlled his association with other prisoners. Plaintiff believes that there is a "quid pro quo" relationship between STG leaders and prison officials.

3

Marquette officials, according to plaintiff, would allow rival gang attacks so long as a weapon was not used.

Plaintiff was moved into the "E-Block Hole on 2nd gallery cell #8." Prisoner Berry was in cell #7 and is also an STG designated Vice Lord. Plaintiff complains that prison officials controlled his association with prisoner Berry. Defendant Viitala allegedly informed prisoner Berry that the prison will let them "do your gangbanging thing" as long as prisoners are not using knives. At that point, defendant Viitala explained that prison officials will come down hard. Plaintiff asserts that defendant Viitala was responsible for placing prisoner Berry on STG status. Defendant Viitala then stated a few days later that he just got prisoner Taylor transferred back from Baraga and that Taylor would be in Marquette around lunch time. Plaintiff claims that this was done simply to instigate STG related contact. Plaintiff believes that prison officials were acting in agreement with Inspector Shane Place. Prisoner Taylor did in fact arrive around lunch time that day. In April 2009, prisoner Taylor attacked Iraqi National prisoner M. Alhumrani while he was talking with prisoner Sanders. Prisoner Alhumrani was then placed in a cell next to plaintiff, and given a misconduct ticket for fighting. Defendant Viitala allegedly told plaintiff that "we all watched it on tape in Place's office - laughing like hell!" Defendant Viitala further volunteers that they knew that prisoner Taylor would attack prisoner Alhumrani.

In May 2009, plaintiff was placed back into general population. On July 12, 2009, plaintiff was again attacked by three black prisoners and severely beaten resulting in injury. His three attackers had an STG 2 designation as Vice Lord enforcers. A couple of guards were also injured during the incident. Plaintiff was then told that prisoner Sanders and the leader of the Vice Lords placed a hit on plaintiff. Plaintiff was given a misconduct ticket for fighting. Plaintiff asserts that the misconduct was factually incorrect because only one attacker was represented. The report,

4

according to plaintiff, concealed the truth of what actually happened. Plaintiff believes that Inspector Place dictated how the report was written. Plaintiff alleges that prisoner Sanders was later placed in the hole for assault on a prisoner during the attack in the cell right behind plaintiff's cell. Plaintiff alleges that this forced his interaction and association with prisoner Sanders. Prisoner Sanders denied placing a hit on plaintiff and told plaintiff that Inspector Place, D. Mayotte, J. Mayotte and Guard Viitala were all involved in setting up the attack.

On September 20, 2009, prisoner Taylor was then placed in segregation near prisoner Sanders. Plaintiff states that this intimidated him and placed him in distress. Prisoner Marcum, a STG Latin King leader, was placed in segregation right next to prisoner Sanders. Plaintiff asserts that prisoner Marcum was told by Inspector Place to keep the young Latins in check. Prisoner Marcum was placed in the hole for not dispersing when ordered. Plaintiff told prisoner Marcum to tell Inspector Place that he was just doing as ordered and was keeping the young Latin's in check. Prisoner Marcum told plaintiff that he wrote Inspector Place the next day as plaintiff suggested. Prisoner Marcum told plaintiff that defendant Viitala tried to recruit him to be one of Viitala's rats, but when Marcum refused, Viitala stated that it was okay because prisoner Sanders tells him everything anyway. Defendant Viitala denied making this comment, but his denial was not believed by any of the prisoners.

Prisoners Marcum and Sanders were then released into general population in October, which plaintiff states is the fastest that he has ever heard of prisoners being released from administrative segregation. Plaintiff believes that Inspector Place ordered these releases simply to provide an opportunity for STG related reprisals. Plaintiff was then released into the general population on October 22, 2009, and was housed near prisoner Sanders. Plaintiff asserts that this was done to set up a potential retaliatory act for the prior assault. Plaintiff alleges that he was then

5

transferred to Baraga Maximum Correctional Facility for no valid reason when he could have been sent to a different prison and placed in a lower security level where there existed no STG activity or rival gang members.

> Plaintiff asserts three claims:
>
> MDOC employees decided to use threats of violence to intimidate plaintiff from exercising First Amendment freedoms; in violation of federal law and the U.S. Constitution - Bill of Rights, 42 U.S.C. § 1983 and 1997(d).
>
> MDOC employees decided to instigate violent attacks against plaintiff, in violation of the Eighth Amendment of the U.S. Constitution - Bill of Rights, 42 U.S.C. § 1983.
>
> MDOC employees decided to expose plaintiff to a continuous cycle of STG related dangers to intimidate black citizens from exercising the freedom of speech, in egregious violation of the Equal Protection Clause, U.S. Constitution - Bill of Rights, 42 U.S.C. § 1985(3) and 1986.

Plaintiff requests declaratory judgment, injunctive relief and compensatory and punitive damages of $100,000.00.

Defendants move for summary judgment. Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see also Tucker v. Union of Needletrades Indus. & Textile Employees*, 407

6

F.3d 784, 787 (6th Cir. 2005). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

Defendants argue that since plaintiff filed his complaint on May 2, 2011, all claims that allegedly occurred prior to May 2, 2008, are barred by the statute of limitations period. In the opinion of the undersigned, plaintiff's alleged claims that occurred prior to May 2, 2008, are barred by the statute of limitations. The United States Supreme Court has held that the limitations period for filing a civil rights action under 42 USC § 1983 is determined by applying the state's most analogous personal injury statute of limitations period. *Wilson v. Garcia*, 471 U.S. 261 (1985); *McSurely v. Hutchison*, 823 F.2d 1002, 1005 (6th Cir. 1987), *cert. denied*, 485 U.S. 934 (1988). In Michigan, the general statute of limitations for personal injury actions is three years. MCL § 600.5805(8). *See also Carroll v. Wilkerson*, 782 F.2d 44 (6th Cir.), *cert. denied, sub nom. Wayne Co. v. Carroll*, 479 U.S. 923 (1986). Since any claim that occurred prior to May 2, 2008, is outside the three year limitation period, and plaintiff clearly was aware of those claims at the time he filed grievances, those claims are barred by the statute of limitations period. Plaintiff's argument that his grievance filings tolled the statute of limitations period is not well taken. Plaintiff cannot use every grievance that he ever filed on any issue against any prison official related or unrelated to previous conduct or a defendant to toll the statute of limitations period.

Defendants argue that plaintiff failed to exhaust grievances on most of his claims. Defendants Rutter, Mayotte and Viitala argue that they were never named in a grievance, and that plaintiff failed to properly grieve the claims asserted against them. Defendant Parkkila concedes that

7

plaintiff exhausted two grievances against him, but argues that the claims asserted in the grievances fail to rise to the level of an Eighth Amendment violation.

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 127 S. Ct. 910, 919-21 (2007). A moving party without the burden of proof need show only that the opponent cannot sustain his burden at trial. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The United States Court of Appeals for the Sixth Circuit repeatedly has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C.

§ 1983 must exhaust his available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 127 S. Ct. 910, 922-23 (2007); *Woodford v. Ngo*, 126 S. Ct. 2378, 2386 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 127 S. Ct. at 922-23.

MDOC Policy Directive 03.02.130 (effective July 9, 2007), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control *Id.* at ¶ P. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶ P. The Policy Directive also provides the following directions for completing grievance forms: "The issues shall be stated briefly. Information provided shall be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R (emphasis in original). The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ X.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. *Id.* at ¶¶ T, DD. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for a medical care grievances. *Id.* at ¶ GG. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III. *Id.* at ¶ FF. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶ FF. The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ GG. Time limitations shall be adhered to by the inmate and staff at all steps of the grievance process. *Id.* at ¶ X. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall be completed within 90 calendar days unless an extension has been approved . . . ." *Id* at ¶ HH.

Plaintiff filed a grievance complaining about his transfer to Baraga Correctional Facility on November 9, 2009, MBP 09-11-2793-28c. That grievance failed to name any of the defendants and was not properly grieved because it was rejected for containing multiple issues. While at Baraga Correctional Facility, plaintiff filed a grievance on November 13, 2009, MBP 10-01-0042-28G, that could arguably be considered relevant to this complaint because of one sentence about manipulative transfers to cause STG members to fight. However in that grievance, plaintiff failed to name any of the defendants. Further, that grievance was rejected for lack of jurisdiction because the events took place at Marquette Branch Prison. Plaintiff filed a similar grievance on November 30, 2009, MBP 09-120301328G, but again did not name any of the defendants. This grievance was rejected on multiple grounds for lack of jurisdiction because the

prison did not have authority to resolve the issues presented, because staff did not violate policy, and because resolution would require plaintiff to first contact the STG coordinator at Baraga Correctional Facility.

On June 7, 2010, plaintiff filed a grievance naming defendants Mayotte and Viitala, MBP 10-06-1443-28E, involving plaintiff's theory that defendants took purposeful actions to encourage violent attacks against plaintiff. This grievance was rejected as untimely. A similar grievance was submitted on the same date, LMF 10-06-1661-28E, naming defendant Rutter. That grievance was rejected as untimely.

Plaintiff argues that the court should excuse his untimeliness because he filed the grievances in 2010, as soon as he learned of the conspiracy. However, because plaintiff should have known that defendants may have had involvement in the alleged transfers prior to plaintiff being involved in fights, plaintiff's conclusory assertions that he just discovered this ongoing conspiracy in 2010, are without support. Plaintiff did not make this claim in a grievance and the court should not overlook the grievance findings when making a determination that a claim was properly exhausted. In the opinion of the undersigned, defendants Rutter, Mayotte and Viitala should be dismissed from this action because of plaintiff's failure to properly grieve the issues asserted against these defendants.

Plaintiff filed two grievances against defendant Parkkila that alleges that defendant Parkkila subjected plaintiff to verbal harassment. Use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not rise to constitutional dimensions. *See Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987); *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Violett v. Reynolds,* No. 02-6366, 2003 WL 22097827, at *3 (6th Cir.

Sept. 5, 2003) (verbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim); *Thaddeus-X v. Langley*, No. 96-1282, 1997 WL 205604, at *1 (6th Cir. Apr. 24, 1997) (verbal harassment is insufficient to state a claim); *Murray v. U.S. Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) ("Although we do not condone the alleged statements, the Eighth Amendment does not afford us the power to correct every action, statement or attitude of a prison official with which we might disagree."); *Clark v. Turner*, No. 96-3265, 1996 WL 721798, at *2 (6th Cir. Dec. 13, 1996) ("Verbal harassment and idle threats are generally not sufficient to constitute an invasion of an inmate's constitutional rights."); *Brown v. Toombs*, No. 92-1756, 1993 WL 11882 (6th Cir. Jan. 21, 1993) ("Brown's allegation that a corrections officer used derogatory language and insulting racial epithets is insufficient to support his claim under the Eighth Amendment."). In the opinion of the undersigned, defendant Parkkila is entitled to dismissal from this action because the claims involving verbal harassment fail to support a violation of the Eighth Amendment.

For the foregoing reasons, I recommend that Defendants' motion for summary judgment (Docket #138) be granted and this case be dismissed in its entirety.

Should the court adopt the report and recommendation in this case, the court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the undersigned recommends granting Defendants' motion for summary judgment, the undersigned discerns no good-faith basis for an appeal. Should the court adopt the report and recommendation and should Plaintiff appeal this decision, the court will assess the $505 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from

proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505 appellate filing fee in one lump sum.

          /s/ Timothy P. Greeley
          TIMOTHY P. GREELEY
          UNITED STATES MAGISTRATE JUDGE

Dated: January 27, 2014

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).